# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES K. BRYANT**, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 09-cv-1063 (GK) |
| **PEPCO**, | : |
| Defendant | : |

## MEMORANDUM OPINION

Plaintiff James K. Bryant, an African American man formerly employed by Defendant, Potomac Electric Power Company ("Pepco"), brings suit under Title VII of the Civil Rights Act, 42 U.S.C. § 1981. Plaintiff's Second Amended Complaint alleges that he was discriminated against based on race (Count I); retaliated against based on race (Count II); subjected to a hostile work environment based on race (Count III); constructively discharged based on race (Count IV); and discriminated against based upon mixed motives including race (Count V).

The matter is presently before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. No. 16]. Upon consideration of the Motion, Opposition, Reply, Supplemental Opposition, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss is **denied** as to Counts I and II and **granted** as to Counts III-V.

## I. BACKGROUND

From April 1974 to March 2008, Plaintiff James K. Bryant was employed by Defendant Pepco. Since August 1993, he has worked as a "Lead Cable Splicer Mechanic." Second Am. Compl. ¶ 6 [Dkt. No. 14]. On June 1, 2004, Bryant was "upgraded" from "Pay Grade 19" ("PG-19") to "Pay Grade 20" ("PG-20"). Id. ¶ 9. As a PG-20, Bryant was entitled to two hours of guaranteed overtime pay per day and increased job responsibilities, including "managing the day to day operation; verifying timesheets for his subordinates . . . record[ing] their work assignments using 'Maximo' software; and, [being] responsible for assigning work projects to the UGHV Leads Pay Grade 19." Id. ¶ 11.

Following his upgrade to PG-20, Bryant's relationship with Pepco changed. In December 2004, Bryant filed a grievance with his union alleging that Pepco had failed to adequately compensate him at PG-20 rates. Id. ¶ 7. Pepco agreed to provide the requested back pay in April 2005. Id. Bryant then filed a similar grievance in March 2006. Id.

In addition, on April 18, 2006 and August 9, 2006, Bryant took part in informal meetings between African American Leads and Pepco management. Id. ¶ 8. At these meetings the Leads "complained of the disproportionate work assignments between White . . . Leads whom [sic] were consequently, provided a greater opportunity to

earn overtime compensation than similarly situated African American . . . Leads." Id.  Bryant also alleges that he, along with other African American Leads, was unable to select his "on-call" assignments and that he specifically complained to Carol Murphy, his white supervisor, of discriminatory treatment toward African American Leads. Id. ¶ 19, 24.

On December 18, 2006--eight months following the first meeting with African American Leads and four months after the second-- Bryant was informed by Carol Murphy that he had been demoted to PG-19. Id. ¶ 9.[1] The Second Amended Complaint alleges that Murphy was the "ultimate decision maker" regarding Bryant's employment at Pepco. Id. ¶ 12.  Following the demotion, Bryant's duties were assigned to a white Lead, Loman Dudley. Id. ¶ 10.

After Plaintiff's demotion from PG-20 to PG-19--and he alleges, as a result of it--he developed a severe emotional disorder. Id. ¶ 13. Under the advice of his clinical psychologist, Dr. Rose, Bryant requested that he be allowed to return to Pepco following completion of his sick leave and be reassigned to a new department with new supervisors. Id.  Bryant alleges that he is

---

[1] Because Plaintiff attached Exhibits 1-4, which are expressly referred to in Plaintiff's Second Amended Complaint, the Court may consider these documents in ruling on the Motion to Dismiss. See, e.g., Jacobsen v. Oliver, 201 F. Supp. 2d 93, 110 (D.D.C. 2002).  According to Defendant's interpretation of these documents, Plaintiff's upgrade to PG-20 was always intended to be temporary.

aware of two white Leads who were permitted to return to work at Pepco following medical leave. Id. ¶ 16; Pl's Decl. 2.

Pepco denied Bryant's request to be transferred. Rather than return to Pepco in his previous capacity at the PG-19 level, Bryant chose to retire with full benefits in March 2008. Second Am. Compl. ¶14.

On July 15, 2009 [Dkt. No. 4], Plaintiff amended his Complaint and on July 29, 2009 [Dkt. No. 5], Defendant filed a Motion to Dismiss, or in the Alternative, for a More Definite Statement. On September 11, 2009, this Court denied Defendant's Motion to Dismiss and granted his Motion for a More Definite Statement [Dkt No. 12]. Plaintiff filed a more definite statement in the form of a Second Amended Complaint on September 22, 2009 [Dkt No. 14]. On October 6, Pepco filed the present Motion to Dismiss [Dkt No. 16]. Plaintiff responded with a Brief in Opposition submitted on October 21, 2009 [Dkt No. 17] to which Defendant filed a Reply on October 30, 2009 [Dkt No. 19]. With leave of this Court, Plaintiff filed a Supplemental Opposition on November 16, 2009, the contents of which are almost wholly duplicative of Plaintiff's initial Opposition Brief [Dkt. No. 21].

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its

face to nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, __ U.S. __, __, 129, S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotation marks and citations omitted); see also Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

-5-

In the Title VII context, a plaintiff need not plead all elements of a prima facie case in order to withstand a 12(b)(6) motion. See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). The prima facie elements are "an evidentiary standard," not a "pleading requirement," particularly in employment cases where discovery "unearth[s] relevant facts and evidence." Id. at 510-12. While Swierkierwicz relied in part on the now abandoned standard from Conley v. Gibson that a motion to dismiss should only be granted if a "plaintiff can prove no set of facts in support of his claim that would entitle him to relief," 355 U.S. 41, 47 (1957), Swierkierwicz's holding remains good law after Iqbal and Twombly.[2] See Winston v. Clough, 2010 WL 1875626, n. 10 (D.D.C. May 11, 2010) ("Swierkierwicz . . . is still good law."); Dave v. Lanier, 606 F. Supp. 2d 45, 49 (D.D.C. 2009) ("It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint."); accord Moore v. Metro. Human Serv. Dist., 2010 WL 1462224, at *3 (E.D. La. Apr. 8, 2010) ("[T]he current pleading standards for a Title VII case . . . reconcile[s] Swierkiewicz, Twombly, and Iqbal."); Gillman v. Inner City Broad., 2009 WL 300244 (S.D.N.Y. Sept. 18, 2009) ("Iqbal was not meant to displace Swierkierwicz."). But see, e.g., Fowler v. UPMC Shadyside, 578

---

[2] Significantly, Twombly relied explicitly on Swierkierwicz and Iqbal failed to mention Swierkierwicz or expressly overturn it.

F.3d 203, 211 (3d Cir. 2009) ("because Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz."). Based on the reasoning of these cases, and in accordance with Fed. R. Civ. P. 8(a)(2), this Court concludes that a Complaint needs to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkierwicz, 534 U.S. at 512.

**III. ANALYSIS**

    **A.   Count III and Count V**

Under Local Rule 7(b), if a plaintiff does not respond in his Opposition to a claim made in a defendant's Motion to Dismiss it may be treated as conceded. See Harris v. Koenig, 2010 WL 2560038 (D.D.C. June 10, 2010). In its pleadings, Defendant argued that Count III should be dismissed because (1) Plaintiff failed to adequately plead any of the required elements of a hostile work environment claim, except that he was a member of a protected class, and (2) that Plaintiff complained only of the kind of "ordinary work-related concerns" which fail to rise to the level of "hostile work environment claims" requiring "discriminatory intimidation, ridicule, and insult." Mem. of Law in Supp. of Pepco's Mot. to Dismiss [Dkt. No. 16-2] (citing Ramey v. Pepco, 468 F. Supp. 2d 51, 57-58 (D.D.C. 2006)). Plaintiff ignored these arguments and failed to respond to Defendant's challenges to Count III.

As to Count V, Plaintiff also failed to respond to Defendant's contentions that Count V is duplicative of Count I, and that Plaintiff failed to identify any specific facts regarding a mixed motive including race. See Mem. of Law in Supp. of Pepco's Mot. to Dismiss. Because Plaintiff failed to oppose Defendant's Motion to Dismiss these counts, Defendant's Motion to Dismiss is **granted** as to Counts III and V.[3]

**B.  Count I**

Count I alleges that Bryant was discriminated against based on his race. To establish racial discrimination under Title VII a plaintiff must show that "(1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (internal citation omitted). As already noted, a plaintiff need not plead all elements of a prima facie case in a Title VII context to survive a Rule 12(b)(6) motion. See Swierkierwicz, 534 U.S. at 512; Winston, 2010 WL 1875626, at n. 10 ("Swierkierwicz . . . is still good law."). As the court explained in Rouse v. Berry, 680 F. Supp. 2d 233, 236 (D.D.C. 2010):

---

[3] It should be noted that Plaintiff was given the opportunity to file a Supplemental Opposition and still failed to respond to Defendant's contentions.

> [T]he D.C. Circuit has long recognized the ease with which a plaintiff claiming employment discrimination can survive a Rule 12(b)(6) motion to dismiss. . . "I was turned down for a job because of my race' is all a complaint has to state to survive a motion under 12(b)(6)." (citing Potts v. Howard Univ. Hosp., 258 Fed. Appx. 346, 347 (D.C. Cir. 2007)).

However, a Plaintiff must plead "enough factual heft to show a plausible entitlement to relief." Winston, 2010 WL 1875626, at *10. Pleadings have sufficient "factual heft" when they allege that "(i) the plaintiff suffered an adverse employment action and (ii) because of his race, color, or religion, sex or national origin." Id. at *8.

Both parties focus their arguments about Count I on two particular acts: (1) Defendant's reduction of Bryant's pay and responsibilities by demoting him from PG-20 to PG-19, and (2) Defendant's denial of Bryant's request to return and be reassigned following the completion of his sick leave. Bryant alleges that both acts were taken because of his race.

### 1. **Plaintiff's Reduced Responsibilities and Wages Claim**

Defendant argues that Plaintiff's allegation that he was demoted from PG-20 to PG-19 because of his race fails to present sufficient factual support to demonstrate Defendant's discriminatory intent. Plaintiff responds that his pleadings

provide sufficient evidence at the pleadings stage to withstand a Rule 12(b)(6) motion.

In Winston v. Clough, a Smithsonian employee's Title VII Complaint alleged simply that the Plaintiff had been suspended without pay "because of his race and color" and that "other co-workers outside of [his] protected class" engaged in the same activity that resulted in his suspension, but were not disciplined. 2010 WL 1875626, at *2. The District Court recognized that these two allegations were very broad. Yet, for purposes of pleading it held that they were sufficient as they not only alleged race-based discrimination but also made a factual argument in support, rendering the Complaint "adequately pled." Id. at *8.

In this case, Bryant's factual claims are similarly few in number. The only factual allegations that he makes are (1) that his duties were given to a white Lead, (2) that he was demoted because of his race, and (3) that white Leads were allowed to choose their own on-call assignments while African American Leads were not. Together, these facts, if proven, provide enough support to "nudge a claim . . . across the line from conceivable to plausible." See Twombly, 550 U.S. at 570. As in Winston, these facts provide factual support necessary at this early pleading stage from which this Court can infer discriminatory acts and intent by Pepco.

### 2. Plaintiff's Reinstatement Claim

Plaintiff also claims that Pepco discriminated against him based on race by denying his request to be reinstated and transferred following completion of his sick leave. Defendant responds that this claim must be dismissed because Plaintiff fails to plead sufficient facts to demonstrate, in anything more than a conclusory way, that his reinstatement and reassignment were denied because of race.

Yet, as above, Plaintiff's pleadings do more than simply allege discrimination in a conclusory fashion. Specifically, He alleges that he is aware of two white Leads who were reinstated by Pepco following their use of sick leave. Pl. Decl. At 2. Because these white comparators were permitted to return following their use of sick leave and he was not, Plaintiff argues it is "plausible" that his request to return to Pepco was not granted because he is African American. See id. As in the previous claim, if proven, the fact that these comparators were able to return following completion of sick leave constitutes sufficient factual support to render his claim "plausible" at this early stage of litigation. Defendant's Motion to Dismiss Count I is therefore **denied.**

## C. Count II

Count II alleges that Pepco demoted Bryant from PG-20 to PG-19 in retaliation for his attendance at two informal meetings that took place between management and black Leads. In order to make out a prima facie case of discriminatory retaliation under Title VII, Bryant needs to show that "(1)[]he engaged in a statutorily protected activity; (2)[]he suffered an adverse employment action; and (3) there is a causal connection between the two." Taylor v. Small, 350 F.3d 1286, 1292 (D.C. Cir. 2003). While Bryant need not plead all the elements of a prima facie case of retaliation, he must plead sufficient factual allegations that together demonstrate "plausibility." Defendant argues that this claim fails to satisfy that standard for two reasons: (1) the Complaint fails to sufficiently identify a "protected activity," and (2) the Complaint fails to adequately articulate a causal link between the alleged protected activity and Bryant's demotion.

There are two kinds of "protected activity" under 42 U.S.C. § 2000e-3(a). The first consists of acts "oppo[sing] any practice made an unlawful practice by this subchapter." Crawford v. Metro. Gov't of Nashville, 129 S.Ct. 846, 850 (2009). The second consists of "ma[king] a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding or hearing." Id. Plaintiff argues that his presence at the meeting

was an act of opposition to what he believed was the unlawful practice of discrimination against African American Leads.

Defendant argues that, in order for Plaintiff's activity to be considered statutorily protected, he must allege that he said something at these meetings or that he did something more than merely attend. A Plaintiff's statement of protected activity, Defendant argues, must not be generic. See Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Yet, Plaintiff's claims are not generic. Rather, Plaintiff specifically alleges that the particular meetings he attended concerned allegations of racial discrimination.

The Supreme Court's recent guidance in Crawford, 129 S.Ct. 846, is telling in this regard. In Crawford, the Court held that protected "opposition" for purposes of Title VII occurs when "an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination . . . ." Id. at 851 (citing EEOC Compliance Manual I-B(1),(2), p. 614:003 (Mar. 2003)). While Bryant does not allege that he spoke at these meetings, his attendance at them certainly could be viewed by his supervisors as opposition to what he perceived as Pepco's discrimination against him and other black Leads. Therefore, Plaintiff's Complaint will not be dismissed on the grounds that he failed to adequately plead a "protected activity."

Defendant argues in the alternative that, even if Plaintiff has sufficiently alleged "protected activity," his retaliation claim should be dismissed on the grounds that he failed to allege a causal connection between his protected activity and an adverse action by Pepco. Because causation is often the most difficult element to show in advance of discovery, courts generally rely on the length of time between the protected activity and the adverse action to determine whether causation has been sufficiently pled at the motion to dismiss stage. See, e.g., Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006); Booth v. District of Columbia, 2010 WL 1286318, *3 (D.D.C. Apr. 1, 2010).

If the adverse action occurs immediately following the protected activity then the court is free to infer causality; if the adverse action happens many months or years later courts are less likely to allow such an inference. See Id. (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-274) (stating that this Circuit has "made it clear that there is a point in time where temporal proximity becomes too remote, without more, to permit an inference of causation. . . [and that is] action which occurs more than three or four months after protected activity is not likely to qualify for such a causal inference.").

However, "temporal proximity . . . is not a required element of a retaliation claim, particularly at this stage of the

-14-

proceedings." Dave, 606 F. Supp. 2d 45, 52-53. In cases like this one where four months separated the alleged protected activity and the alleged discrimination, temporal proximity neither demonstrates causality conclusively nor eliminates it conclusively. Therefore, courts must apply the traditional standard that "[a]t this early stage of the proceedings, plaintiff can meet [his] prima facie burden of causation simply by alleging that the adverse actions were caused by [his] protected activity." Vance v. Chao, 496 F. Supp. 2d 182, 187 (D.D.C. 2007).

Here, Plaintiff alleges that "as a result of having engaged in a protected activity . . . he suffered retaliation in the form of reassignment. . . ." Second Am. Compl. ¶ 25. To be sure, Plaintiff's claim could be stronger if he had pled the connection between the protected activity and the adverse action with greater specificity. Yet, such details are not required at this early stage of the pleadings, particularly when only four months separate the alleged protected activity and adverse action. Therefore, Defendant's Motion to Dismiss Count II is **denied.**

   **D.   Count IV**

Finally, Plaintiff fails to allege sufficient facts to render his claim in Count IV for "constructive discharge" plausible. To establish a claim of constructive discharge, the plaintiff must prove that "(1) intentional discrimination existed, (2) the

-15-

employer deliberately made working conditions intolerable, and (3) aggravating factors justified the [plaintiff's] conclusion that [he] had no option but to end [his] employment." Villines v. United Brotherhood of Carpenters and Joiners of America, AFL-CIO, 999 F. Supp. 97, 104-05 (D.D.C. 1998) (citing Clark v. Marsh, 665 F.2d 1168, 1173-74 (D.C. Cir. 1981)). Plaintiff's only pleadings in support of his allegation for constructive discharge state that his doctor recommended he be transferred and Defendant refused to transfer him. In addition, he alleges, in conclusory fashion, with no factual detail, that he was subjected to "intolerable working conditions"--one of the elements necessary to establish "constructive termination."

Plaintiff's pleadings are deficient in two ways. First, Plaintiff fails to plead any additional facts to demonstrate that he was subjected to "intolerable working conditions," an essential element of a constructive termination claim. Rather, he simply restates that he was not granted the reassignment that he requested. This is insufficient under Twombly as it represents little more than a "formulaic recitation of the elements of a cause of action." 550 U.S. at 556. Second, simply denying a transfer, even if recommended by a doctor, is not the kind of harassing conduct required to demonstrate that a reasonable Plaintiff would

be left "no realistic option but to quit his or her job." See, e.g., Veitch v. England, 471 F.3d 124, 131-32 (D.C. Cir. 2006). As Plaintiff fails to allege sufficient facts to support either the claim that he was denied his request for transfer because of his race or the claim that not being granted a transfer reached the level of "intolerable working conditions," Plaintiff's Motion to Dismiss as to Count IV is **granted**.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6) is **granted** for Counts III-V. It is **denied** as to Counts I and II. An order will accompany this Memorandum Opinion.

August 9, 2010    /s/_____
                  Gladys Kessler
                  United States District Judge

**Copies via ECF to all counsel of record**